IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **OWNER-OPERATOR INDEPENDENT DRIVERS ASSOCIATION, INC.,** *et al.*, | : : : |
| **Plaintiffs,** | : Case No. 97-CV-750 : |
| v. | : JUDGE ALGENON L. MARBLEY : |
| **ARCTIC EXPRESS, INC.,** *et al.*, | : Magistrate Judge King : |
| **Defendants.** | : : |

## OPINION & ORDER

Before the Court are unopposed Motions for Settlement Approval (Doc. 246) and Attorney Fees (Doc. 250) filed by Plaintiffs Carl Harp, Owner-Operator Independent Drivers Association, Inc. ("Owner-Operator"), Garvin Keith Roberts, and/or Michael Wiese. The Court held a September 14, 2016 Fairness Hearing concerning the motions. Also before the Court is Plaintiffs' Motion for Order to Application for Entry of Final Order Approving Settlement and Settlement Distribution Plan (Doc. 257). For the reasons that follow, the Court **GRANTS** the motions, approving the Settlement Agreement, and awarding Class Counsel attorney fees amounting to $1,000,000 and costs amounting to $249,277, and named Plaintiffs Carl Harp and Michael Wiese a representative service award amounting to $25,000 each.

### I. BACKGROUND

#### A. Nascence

This is a truth-in-leasing class action (the "Arctic Case") concerning certain escrow funds of independent truck drivers ("owner-operators"). The Court has recited the factual and procedural background of this case and its sister, *Owner-Operator Indep. Drivers Ass'n v. Comerica*, No. 2:05-cv-00056 (S.D. Ohio) (the "Comerica Case"), several times throughout their

1

lengthy histories.[1] For the purposes of this Opinion and Order, the following summary will suffice.

Plaintiffs initiated this action in June of 1997 asserting that Defendants Arctic Express, Inc. ("Arctic") and D&A Associates, Ltd. ("D&A") failed to return funds used to satisfy owner-operators' maintenance obligations for equipment leased from D&A. The Court determined that the funds were "escrow" funds as defined by 49 C.F.R. § 376.12(k), and that Defendants' failure to return the funds violated 49 C.F.R. § 376.12(k)(6), which provides that "in no event" shall an escrow fund under the regulation "be returned later than 45 days from the date of termination." *Arctic Express*, 87 F. Supp. 2d at 831; *see Arctic Express*, 159 F. Supp. 2d at 1076 ("D&A[] absconded with the Plaintiffs' escrow funds.").

On September 4, 2001, ruling on Plaintiff's renewed motion for class certification in the Arctic Case, the Court certified the following class (the "Arctic Class"):

> All independent truck owner-operators who have (1) entered agreements with Defendant D&A Associates, Ltd., which purport to lease, with the option to purchase, trucking equipment under the terms of D&A's equipment lease/purchase agreement, and (2) leased that equipment to Defendant Arctic Express, Inc. under the terms of Arctic's federally-regulated motor carrier lease agreement.

*Arctic Express*, 2001 U.S. Dist. LEXIS 24963 at *16.

Meanwhile, On October 31, 2003, Arctic and D&A filed voluntary petitions for bankruptcy pursuant to Chapter 11, title 11 of the United States Bankruptcy Code (the "Chapter

---

[1] *See* Op. & Order on Defs.' Mots. to Dismiss, *Owner-Operator Indep. Drivers Ass'n, Inc. v. Arctic Express, Inc.*, 87 F. Supp. 2d 820 (S.D. Ohio 2000); Op. & Order on Cross-mots. for Partial Summ. J., *id.*, 159 F. Supp. 2d 1067 (S.D. Ohio 2001); Op. & Order on Pls.' Renewed Mot. for Class Certification, *id.*, No. C2:97-CV-750, 2001 U.S. Dist. LEXIS 24963 (S.D. Ohio, Sep. 4, 2001).

2

11 Case")[2] in the United States Bankruptcy Court for the Southern District of Ohio (the "Bankruptcy Court"), which issued its final decree in the Chapter 11 Case on September 8, 2008.

### B. The Comerica Case

On January 16, 2004, Plaintiffs initiated in the Bankruptcy Court an adversary proceeding (the "Adversary Proceeding") against Defendant Comerica Bank ("Comerica") and Debtor Defendants.[3] Arctic had entered into two revolving credit agreements (the "Loan Agreements") with Comerica in May of 1993 and April of 1998. Plaintiffs alleged that Comerica held escrow funds owed to the Arctic Class Members that it collected to pay down Arctic's obligations under the Loan Agreements. By stipulation of the parties, the Court withdrew the reference from the Bankruptcy Court on March 28, 2005, birthing the Comerica Case.

The Comerica Case was successfully appealed twice. On March 4, 2011, the Sixth Circuit reversed in part and remanded the Court's summary judgment in Comerica's favor. *In re Arctic Express, Inc.*, 636 F.3d 781 (6th Cir. 2011). Following a late 2011 bench trial on the statute-of-limitations defense, the sole issue to be resolved on remand, the Court entered judgment for Plaintiffs and damages amounting to $5,583,084.00. (Doc. 155.)

On April 3, 2014, the Sixth Circuit vacated the Court's final judgment, remanding for further proceedings. *Owner-Operator Indep. Drivers Ass'n, Inc. v. Comerica Bank*, 562 F. App'x 312 (6th Cir. 2014).

After that second remand, the Court reopened the case to schedule a damages trial. Per joint motion, on September 17, 2015, the Court suspended the trial date, and on December 28, 2015, the parties notified the Court that a tentative agreement (the "Agreement" or, the

---

[2] Case Nos. 03-66797, 03-66802. (Doc. 204, ¶ E.)
[3] Case No. 04-ap-02022. (Doc. 204, ¶ F.)

3

"Settlement Agreement") had been reached in the Arctic litigation which, once resolved, would dispose of the Comerica Case.

### C. The Arctic Case

The tentative settlement in the Arctic Case was reached on May 21, 2004, (Doc. 203), which the Court approved provisionally on May 28, 2004. (Doc. 204.)

The Court's provisional approval of the parties' 2004 Settlement Agreement found fair and reasonable as follows: a Judgment Amount of $5,583,084, which was for the total in maintenance escrows, plus interest, claimed by the Class, and which was consistent with the Court's prior rulings governing the calculation of damages, (Doc. 203 at 3; Doc. 204, ¶¶ A-D); a provision prohibiting subjecting the Judgment Amount to setoff, recoupment, or 11 U.S.C. §§ 502(d), 542(b), notwithstanding any provision in the Claims Procedure Order entered by the Bankruptcy Court, (Doc. 204, ¶ E); the parties also arranged to certify a Class in the Chapter 11 Case (the "Bankruptcy Class"), including a stipulation of Arctic and D&A in the Chapter 11 Case and Adversary Proceeding, which certified the Bankruptcy Class and would appoint and ratify the Court's designation of Plaintiffs Carl Harp and Michael Wiese as Class Representatives, and approve Paul D. Cullen, Sr. and Joyce E. Mayers of The Cullen Law Firm, PLLC as counsel for the Bankruptcy Class, and subjecting notice and approval to the supervision of the Bankruptcy Court, (*id.*, ¶ F).

The Court further provisionally approved distribution of $900,000.00 in Chapter 11 Case as follows:

> i. $75,000.00 on the date that is six months after the effective date of the Plan.
> ii. $75,000.00 on the date that is twelve months after the effective date of the Plan.
> iii. $125,000.00 on the date that is eighteen months after the effective date of the Plan.

4

>> iv. $125,000.00 on the date that is twenty-four months after the effective date of the Plan.
>> v. $137,500.00 on the date that is thirty months after the effective date of the Plan.
>> vi. $137,500.00 on the date that is thirty-six months after the effective date of the Plan.
>> vii. $112,500.00 on the date that is forty-two months after the effective date of the Plan.
>> viii. $112,500.00 on the date that is forty-eight months after the effective date of the Plan.

(*Id.*, ¶ G.) And upon confirmation of Defendants' Plan of Reorganization in the Chapter 11 Case, Class Representatives were to take all necessary steps to dismiss Arctic and D&A from the Adversary Proceeding with prejudice, after which Class Representatives would further seek withdrawal of the bankruptcy reference with respect to the claims alleged in the Adversary Proceeding. (*Id.*, ¶ H.)

The Court provisionally approved the parties' proposed Notice of Class Action Settlement and Settlement Distribution Plan pending a hearing on the matters to be held on July 16, 2004, at which the Court approved the settlement, and after which it confirmed its Provisional Order. (*Id.*, ¶¶ I-N; Confirmation, Doc. 208.)

### D. Approval

On February 17, 2016, Plaintiffs filed their Motion for Settlement Approval. On March 1, 2016, the Court preliminarily approved Plaintiffs' motion, and scheduled a fairness hearing in the Court on September 14, 2016 at 9:00am to determine whether the proposed Settlement is fair, reasonable, and adequate, and to consider Class Counsel's application for attorney fees, which Class Counsel requested by filing their Motion for Attorney Fees on March 31, 2016 (Doc. 250). (Doc. 247, ¶ 12.)

5

## E. The Settlement Agreement

The Settlement Agreement seeks to resolve all claims in this suit and, upon reaching a final agreement, seeks also to resolve all claims in the pending Comerica Case. Under the Agreement, $3,000,000 of the $4,042,928.43 Plaintiffs calculated were owed will be paid in full and final satisfaction of Comerica's liability to Class Members. Under the Settlement Distribution Plan, the Settlement Amount shall be due the latter of: (i) seven (7) days after the deadline to file any appeal from the order or orders approving this class settlement (the "Approval Orders"), if no such appeal is filed; (ii) seven (7) days after the deadline to file any appeal from an order finding Comerica's payment of the Settlement Amount is deemed to be full and final satisfaction of Comerica's liability in this litigation and in the Comerica Case (the "Order"), if no such appeal is filed; or (iii) if an appeal is filed from the Approval Orders and/or from the Order, seven (7) days after all appeals of the Approval Orders and Order have been exhausted and both the Approval Orders and the Order are affirmed in full. Comerica shall pay the Settlement Amount to the third-party claims administrator, First Class, Inc., 5410 W. Roosevelt Road, Suite 222, Chicago, IL 60644-1479 (the "Claims Administrator"), by check payable to "The Certified Class of Owner-Operators, Case No. C2-97-750, United States District Court for the Southern District of Ohio." The Comerica Case will be dismissed with prejudice within seven (7) days of the payment of the Settlement Amount. Further, distributions to Class Members will be made pro rata based upon the net balance in maintenance escrow funds due to an individual Class Member, accounting for any settlement payments previously disbursed pursuant to the Approval Order. (Doc. 246 at 5.)

Class Representatives will be paid $25,000 each, with the $50,000 being deducted from the Settlement Amount prior to the calculation of pro-rata shares to other Class Members. (*Id.* at 6.)

For out-of-pocket expenses, Plaintiffs seek a Court Order reimbursing them with funds deducted from the Settlement Amount prior to the calculation of pro-rata shares to class members. (*Id.*)

The Agreement would have administrative costs be paid from the Settlement Amount. The costs include those related to accounting, processing, mailing, and auditing the settlement's administration. (*Id.* at 7.)

Finally, under the Settlement Agreement, at the conclusion of distribution, upon motion and approval by the Court, any undeliverable funds would be used to pay one of either (1) unreimbursed attorneys' fees for the work performed in the Arctic and Comerica Cases or, (2) a *cy pres* distribution to the Owner-Operator Independent Drivers Association Foundation, Inc., a 501(3)(c) charitable non-profit. (*Id.* at 7.)

## II. LAW AND ANALYSIS

### A. Final Certification and Final Approval

The Court has already certified the Rule 23 class. The Court finds that nothing has changed with regard to the appropriateness of either class certification under Rule 23, or approval of Class Counsel and Class Representatives.

### B. Sufficiency of Notice

In class actions certified under Rule 23(b)(3), notice must meet the requirements for both Federal Rules of Civil Procedure 23(c)(2)(B) and 23(e). Rule 23(e) specifies that no class action may be settled, dismissed, or compromised without court approval, preceded by notice to class

members. Fed. R. Civ. P. 23(e). Rule 23(c)(2) requires that notice to the class be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The notice must be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 629-30 (6th Cir. 2007) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

The Court finds that the notice herein comports with due process. The Notice Form informs Class members of all pertinent information regarding the Agreement's substance, procedures, and members' rights concerning the same. (Notice of Settlement, Doc. 246-2.) The Form provides the backgrounds of the Arctic and Comerica cases, the amount and distribution of the settlement, the incentive awards to Class Representatives, the agreement concerning attorney fees and costs, and the procedure for handling undeliverable funds. (*Id.*) The Form also provides the date, time, and location of the Fairness Hearing, and it outlines Class Members' rights to opt out or object to the Agreement, including giving instructions for how to appear at the Fairness Hearing to object in person. (*Id.*) The Form was mailed to the last known address of Class Members, and was also published in the May issue of Landline Magazine, the periodical most likely to be read by Class Members.

### C. Whether Fair, Reasonable, and Adequate

Before approving a settlement agreement, the Court must determine if the settlement is "fair, adequate, and reasonable, as well as consistent with the public interest." *Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38, 42 (6th Cir. 1990). In determining whether the proposed settlement is fair, reasonable and adequate, the Court considers several factors:

    (1) the risk of fraud or collusion;

    (2) the complexity, expense and likely duration of the litigation;

    (3) the amount of discovery engaged in by the parties;

    (4) the likelihood of success on the merits;

    (5) the opinions of class counsel and class representatives;

    (6) the reaction of absent class members; and

    (7) the public interest.

*UAW*, 497 F.3d at 631. In reviewing a proposed class action settlement, the district court has "'wide discretion in assessing the weight and applicability' of the relevant factors." *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 754 (6th Cir. 2013) (quoting *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992)).

The court may limit the fairness hearing "to whatever is necessary to aid it in reaching an informed, just and reasoned decision." *Tenn. Ass'n of HMOs*, 262 F.3d 559, 567 (6th Cir. 2001) (citations omitted). The court should not, at the fairness hearing, "determine the merits of the controversy or the factual underpinning of the legal authorities advanced by the parties." *Williams v. Yukovich*, 720 F.2d 909, 921 (6th Cir. 1983); *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 904 (S.D. Ohio 2001). However, a court "cannot 'judge the fairness of a proposed compromise' without 'weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement,'" *UAW*, 497 F.3d at 631 (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981)), and "[p]arties to the settlement must proffer sufficient evidence to allow the district court to review the terms and legitimacy of the settlement." *Id.* at 635. Because all seven factors militate in favor of so finding, the Court finds that the Agreement is fair, reasonable, and adequate.

First, all parties have been represented by competent, zealous, and experienced counsel since the outset of litigation. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982) (holding that approval of a settlement is appropriate where "initiation of the action by the employees provide some assurance of an adversarial context").

The second and third factors also weigh in favor of approving the Agreement. After nearly two decades of litigation, including two trips to the Sixth Circuit, this matter approaches byzantine, exorbitant, and epochal proportions. Discovery conducted throughout has been by all accounts intensive and comprehensive.

Because the case has presented vexing questions throughout the course of litigation, and because a third appeal is likely, if not certain, if a judgment were entered adverse to either party, consideration of the fourth factor militates in favor of approving the Agreement.

Class Counsel and Representatives favor the Agreement, and no Class Members have objected to its terms. One identified Class Member opted out, as reflected in an April 23, 2016 notice with the Clerk of Court, but that person provided no basis for his decision.

Finally, the public policy generally supports settlement of class-action lawsuits. *Hainey v. Parrott*, 617 F. Supp. 668, 679 (S.D. Ohio 2007) (citation omitted). Here, the Agreement provides Class Members immediate relief, avoids further litigation, and frees the Court's judicial resources.

### D. Attorney Fees

The Court has ordered attorney fees twice. On July 16, 2004, in the Arctic Case, the Court awarded Plaintiffs' counsel a "common fund" award entitling counsel a reasonable fee from the fund as a whole, which it calculated as 1/3 of the fund. (Doc. 210.) The Court found it

significant that the litigation was complex and involved issues of first impression. The Court ordered that Class Counsel take its fees only from amounts actually collected.

An attorney who recovers "for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). District courts have the discretion "to determine 'the appropriate method for calculating attorneys' fees in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them.'" *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 779 (6th Cir. 1996) (quoting *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993)). No matter which method used for its determination, the Court's award must "be 'reasonable under the circumstances.'" *Id.*

On March 27, 2013, the Court addressed attorney fees for the combined cases. (Comerica Case, Doc. 171.) The Court credited Class Counsel's performance in matters involving more than one issue of first impression, recognizing the "years of litigation, including an appeal to the Sixth Circuit," and the "extraordinary discovery and a bench trial" which expended significant time and resources. (*Id.* at 3.) Unlike in 2004, the Court found it appropriate to award Class Counsel using the lodestar (instead of common-fund) method. After discounting for some concerns, including mishandling of discovery during the trial, the Court approved an award of $2,925,889.25 in attorney fees. Comerica appealed the judgment and, on remand, the Court ordered an evidentiary hearing on the calculation of damages, which involved conducting discovery, including calling upon experts, and filing various pretrial submissions, including motions *in limine* leading up to the $3,000,000 Agreement now before the Court.

Guiding the Court's analysis of the motion for attorney fees is the consideration of: "(1) the value of the benefit rendered for the class, (2) society's stake in rewarding attorneys who

11

produce such benefits, (3) whether the services were undertaken on a contingent fee basis, (4) the value of the services on an hourly basis, (5) the complexity of the litigation, and (6) the professional skill and standing of the attorneys involved." *Kritzer*, 2012 WL 1945144, at *9 (citing *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974)).

Here, Plaintiffs will have recovered $3,000,000 of the $4,042,928 owed according to Plaintiffs' calculation. This recovery was hard-fought, and liability was not apparent at the outset of litigation. The recovery is a laudable achievement.

Second, along with actually getting money, this litigation helped resolve issues of first impression, setting precedents involving the rights and responsibilities of Class Members, motor carriers and third parties. Class Members would have found it impracticable and against their best interests to vindicate their rights individually. Society has a clear interest in encouraging counsel to litigate cases "enabling . . . claimants to pool their claims and resources' to achieve a result they could not obtain alone." *In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, 268 F. Supp. 2d 907, 936-37 (6th Cir. 2003) (quoting *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 1029, 1043 (S.D. Ohio 2001)).

The third and fourth factors, risk of nonpayment and value of services, militate in favor of granting an award. At no point was a favorable outcome for Plaintiffs clear, and that uncertainty would remain were the parties to further litigate the case. Class Counsel are compensated under a modified contingent-fee arrangement with Owner-Operator at rates discounted from full rates charged other clients. (Cullen Decl., Doc. 250-2, ¶ 7.) Cullen billed at $225-375 per hour for attorneys in the Arctic and Comerica Cases, whereas other clients are billed "at rates consistent with the Laffey Matrix published by the Department of Justice" (*Id.*), which, as of 2014, allows for up for $510 per hour for an attorney with 20+ years of experience.

*See* Laffey Matrix – 2003-2014, Dep't of Justice, *available at*

*www.justice.gov/sites/default/files/usao dc/legacy/2013/09/09/Laffey_Matrix%202014.pdf* (last

seen Sept. 13, 2016).

Fifth, both the Arctic and Comerica Cases were undoubtedly complex, touching on many matters of first impression.

Finally, counsel on both sides have been of the highest quality. Parties were represented by skilled, competent and qualified attorneys vigorously at all stages of litigation.

Given the foregoing, the Court grants Class Counsels' request for attorney fees amounting to $1,000,000.

### E. Out-of-pocket Expenses

The Court grants Class Counsels' request for out-of-pocket expenses amounting to $249,277 to be taken from the Settlement Amount prior to the calculation of pro-rata shares to other class members. *See In re Packaged Ice Antitrust Litig.*, 2012 WL 5493613, at *8 (E.D. Mich Nov. 13, 2012) (approving costs to plaintiffs' counsel for travel, telephone, printing, Westlaw, and other necessary costs).

### F. Class Representative Service Awards

The Court grants Class Counsels' request to award $25,000 each to named Class Representatives Carl Harp and Michael Weise, to be paid out of the Settlement Amount prior to the calculation of pro-rata shares to class members. Providing class representative service awards is "[an] efficacious way[] of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003). A court's award of such an incentive award is permissible, and reviewed only for abuse of discretion. *Id.* The $25,000 represents an award for each plaintiff who "expended

substantial time providing evidence necessary to the successful pursuit" of the litigation. Given that the course of these cases have been protracted, treacherous, and hotly contested, $25,000 is fair compensation for each plaintiff's risk and effort.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motions for Settlement Approval, and for Attorney Fees amounting to $1,000,000 and costs amounting to $249,277, and named Plaintiffs Carl Harp and Michael Wiese a representative service award amounting to $25,000 each. The Court **GRANTS** Plaintiffs' Motion for Order to Application for Entry of Final Order. Based on the foregoing, the Court hereby **ORDERS** that upon payment by Comerica Bank of the $3,000,000 Settlement Amount to the third-party claims administrator, First Class, Inc., 5410 W. Roosevelt Road, Suite 222, Chicago, IL 60644-1479, Comerica Bank is hereby discharged from any further liability to Harp, Wiese, Owner-Operator, and the Arctic Class, anyone claiming on behalf of Harp, Wiese, Owner-Operator, or the Arctic Class, or any other person, for any amount relating to the Judgment entered in this action or for any claims that were asserted or could have been asserted in this action or in the Comerica Case against Comerica. Comerica's payment of the Settlement Amount is deemed to be full and final satisfaction of Comerica's liability in this action and the Comerica Case.

**IT IS SO ORDERED.**

                  s/ Algenon L. Marbley  
                **ALGENON L. MARBLEY**  
                **UNITED STATES DISTRICT JUDGE**

**DATED: September 21, 2016**